# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SCOTT R. MARCUM AND KERSTIN MARCUM , <br>             **Plaintiff,** <br><br> v. <br><br> COLUMBIA GAS TRANSMISSION, LLC., COLUMBIA GAS TRANSMISSION COMMUNICATIONS CORPORATION, CROWN CASTLE INTERNATIONAL CORP., AND PERCHERON, LLC, <br>             **Defendants.** | CIVIL ACTION <br><br><br> NO. 19-3873 |

## **MEMORANDUM**

Plaintiffs Scott and Kerstin Marcum filed a complaint seeking compensatory and punitive damages stemming from the excavation and installation of pipes in their yard. Defendants Columbia Gas Transmission, LLC ("Columbia") and Crown Castle International both moved for partial dismissal of the action.

## I.    **FACTS**[1]

Plaintiffs own a home in Downington, Pennsylvania. They purchased the home in 1998 subject to an easement for a pipeline granted in 1957. Plaintiffs report no issues related to that easement. In 1999, Plaintiffs and Columbia entered into a Right of Way and Easement Agreement for the purpose of installing an underground communications system within the area of the Plaintiffs' property already subject to the 1957 easement. In 2002, Columbia sought to expand the easement to install a larger pipe. After some contest, Plaintiffs signed the new agreement. Columbia again approached Plaintiffs to add a fiberoptic cable to the easement in 2014. Plaintiffs signed the easement agreement, at issue in this suit, in May of that year.

---

[1] These facts are drawn from the complaint and, for the purposes of the motion to dismiss, will be taken as true. *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).

Columbia began construction pursuant to the easement in summer of 2015. After the construction, Plaintiffs began experiencing water and mud runoff outside the easement zone. A mudslide damaged interior drywall in their home. In February 2018, Plaintiffs observed a sinkhole within the easement zone. Columbia attempted to repair the sinkhole; in the course of their repairs, Columbia realized the artery it needed to fill was much deeper than it originally thought, and it had concerns about the integrity of the street. Around December 7, 2018, Plaintiffs learned that the artery that needed to be filled was in the same location as the fiberoptic cable. Plaintiffs then concluded that the water damage to their home was caused by subsurface water channeling into the artery and the fiberoptic cable hole.

As of the time the complaint was filed, another sinkhole was emerging in the easement area. It will likely require additional, significant construction to close it. And new sinkholes are expected to open in the coming months. Plaintiffs filed suit against Columbia Gas Transmission (the primary company in charge of construction on the easement); Columbia Transmission Communications Corporation (the initial holder of the easement); Crown Castle International Corporation (the successor-in-interest to Columbia Communications, which was purchased in 2013); and Percheron LLC (the project manager for Columbia Gas).

## II. LEGAL STANDARDS

In order to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare" recitations of the elements of a claim supported only by "conclusory statements" are insufficient. *Id.* at 683. Plaintiff's allegations must rise above mere speculation. *Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 542

(3d Cir. 2012) (citing *Twombly*, 550 U.S. at 545).

Count I of Plaintiffs' complaint alleges fraudulent concealment. Rule 9(b) imposes a heightened pleading standard on fraud claims, requiring the party to plead with "particularity" the circumstances constituting fraud. The complaint must "either describe the circumstances of the alleged fraud with precise allegations of date, time, or place or may use some [other] means of injecting precision and some measure of substantiation into ... allegations of fraud." *Bd. of Trs. of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 172 n.10 (3d Cir. 2002) (internal quotations and citations omitted).

Columbia also brings a motion to dismiss under Rule 12(b)(1), asserting a factual challenge to the court's subject matter jurisdiction. More specifically, it argues that a binding arbitration clause strips the court of jurisdiction. *See Org. Strategies, Inc. v. Feldman Law Firm LLP*, 604 F. App'x 116, 119 (3d Cir. 2015); *Voegele Mech., Inc. v. Local Union No. 690*, -- F. Supp.3d ----, 2019 WL 3889747, at *10 (E.D. Pa. Aug. 19, 2019). "Because at issue in a factual 12(b)(1) motion is the trial court's … very power to hear the case there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Mortensen v. First Fed. Sav. and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977); s*ee also Robinson v. Dalton*, 107 F.3d 1018, 1021 (3d Cir. 1997).

### III. <u>ANALYSIS</u>

**A. Fraudulent Concealment**

Plaintiffs argue that Columbia committed the tort of fraudulent concealment[2] by "failing to disclose to plaintiffs that the proposed construction activities were likely to result in

---

[2] In their Memorandum in Opposition to Columbia's Motion to Dismiss, Plaintiffs argue that they also raised the closely related tort of fraudulent nondisclosure. But while closely related, nondisclosure is a separate tort from fraudulent concealment. *See Youndt v. First Nat'l Bank*, 868 A.2d 539, 549 (Pa. Super. 2005). Plaintiffs' complaint specifically, and only, mentions fraudulent concealment. No fraudulent nondisclosure claim was pled.

subsidence and sinkholes in the future." Fraudulent concealment in Pennsylvania is grounded in Section 551 of the Restatement (Second) of Torts. *Gaines v. Krawczyk*, 354 F. Supp.2d 573, 587 (W.D. Pa. 2004). Plaintiffs must show:

> (1) [Defendant caused] an omission; (2) the omission was material to the transaction at hand; (3) the omission was made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) the omission was made with the intent of misleading another into relying on it; (5) the plaintiff justifiably relied on the omission; and (6) the resulting injury was proximately caused by the reliance.

*Id.* (citing *Gibbs v. Ernst*, 647 A.2d 882, 207 n.12 (Pa. Super. 1994)).

In addition to those six elements, Plaintiffs also must show a special relationship that would give rise to a duty to speak between them and the party that fraudulently concealed information. "[M]ere silence is not sufficient in the absence of a duty to speak." *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 612 (3d Cir. 1995) (internal quotations omitted). Most commonly, this means showing a fiduciary relationship between Plaintiffs and Defendant. *eToll, Inc. v. Elias/Savion Advertising Inc.*, 811 A.2d 10, 23 (Pa. Super. 2002). A "fiduciary duty is the highest duty implied by law… . [It] requires a party to act with the utmost good faith in furthering and advancing the other person's interests, including a duty to disclose all relevant information." *Yenchi v. Ameriprise Fin., Inc.*, 161 A.3d 811, 819–20 (Pa. 2017) (internal citation omitted).

A simple difference in baseline knowledge does not create a special relationship—if "a party did not believe that the professional possessed specialized expertise worthy of trust, the contract would most likely never take place." *eToll*, 811 A.2d at 23. A special relationship generally does not arise in a typical, arms-length business transaction unless "one party surrenders substantial control over some portion of its affairs to the other." *Gaines*, 354 F. Supp.2d at 586. This is often described as requiring "overmastering influence" on one side or

"weakness, dependence, or trust, justifiably reposed" on the other side. *eToll*, 811 A.2d at 23.

Certain relationships give rise to a fiduciary duty, and thus a duty to speak, by operation of law, such as principal and agent, attorney and client, and partnership relationships. *Yenchi*, 161 A.3d at 820. Most other relationships yielding this duty are more fact specific. *Id.* at 811. Thus, examples of where such special relationships have been found under Pennsylvania law are instructive. The duty to speak often arises in the home purchase setting where one party has unique knowledge. For example, a seller who knows of a termite infestation has a duty to tell an unwitting buyer about it. *Gaines*, 354 F. Supp.2d at 586. It also frequently arises when one party has a special vulnerability. A special relationship, requiring disclosure, thus existed between "an elderly and infirm eighty-six-year-old widow with little formal education and, on the other, neighbors who had befriended her" and convinced her to sell her house at an unreasonably low price. *Yenchi*, 161 A.3d at 821.

Plaintiffs allege in their complaint that Columbia owed them "a fiduciary duty to disclose facts known to Columbia but not ascertainable by plaintiffs because those facts were material to the transaction." But Plaintiffs fail to identify a basis for a fiduciary duty existing between the parties—as pled, Plaintiffs and Columbia appear to be in a standard, arms-length business relationship.[3] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a viable claim. *Iqbal*, 556 U.S. at 678. Because Plaintiffs did not adequately plead the existence of any type of special relationship between

---

[3] Plaintiffs cite to *Quashnock v. Frost* to argue that a fiduciary duty arises whenever there is a latent or hidden risk, and in this case, there was a latent risk in pipeline excavation. 445 A.3d 121,128 (Pa. Super. 1982). *Quashnock*, a termite infestation case from an intermediate Pennsylvania court, held that a party with superior knowledge had a duty to disclose a latent or "manifestly [] serious and dangerous condition … not readily observable upon reasonable inspection." *Id.* More recent guidance from the Pennsylvania Supreme Court, however, makes it clear that "superior knowledge or expertise" alone does not impose a fiduciary duty. *Yenchi*, 161 A.3d at 823. Plaintiffs have failed to allege any dangerous or latent defect or superior knowledge going beyond that of a typical, arms-length business transaction.

Columbia and themselves, their claim for fraudulent concealment will be dismissed.[4]

### B. Negligent Construction and Failure to Maintain

Plaintiffs next alleges that Columbia's negligent construction and failure to maintain the property resulted in damages for loss of value, loss of the right to quiet enjoyment of their property, and physical damage to their home and property. Columbia argues first that these claims are governed by an arbitration clause, and in the alternative, that they are barred by the gist of the action doctrine.

####    1.  The Arbitration Clause

Columbia first argues that an arbitration clause in the 2014 Easement Amendment Plaintiffs signed covers this claim. Under the damages provision of the contract, "Columbia agree[d] to pay for any damage to fences, tile drains, marketable timber, crops, *and the like* that is caused by the activities conducted pursuant to" the Agreement. Ex. A at 3 (emphasis added). The next paragraph of the contract provides that, "If the amount payable for damage under the preceding paragraph cannot be mutually agreed upon, it shall be determined by a panel of three disinterested arbitrators. The arbitration and the award shall be limited to the amount payable for damages pursuant to the preceding paragraph." According to Columbia, "and the like" in the damages provision captures Plaintiffs' claim for damages to their house and property.

The question whether a dispute is within the terms of an arbitration agreement is for the Court to decide.[5] *LaCourse v. Fireman's Ins. Co. of Newark, N.J.*, 756 F.2d 10, 12 (3d Cir. 1985). The court must determine whether there is "an express, unequivocal agreement" to

---

[4] Columbia further argues that Plaintiff fails to meet other elements of fraudulent concealment and that their request for punitive damages must be denied. As the Complaint does not sufficiently allege a fiduciary duty, the Court does not address these arguments.

[5] The court uses state law contract principles to make this determination. *Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002).

arbitrate the particular claims asserted. *Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764, 773 (3d Cir. 2013).

Columbia is correct that, by operation of the phrase "and the like," the arbitration clause covers more than just the items specifically listed. *See In re Pennsylvania Co. for Insurances on Lives and Granting Annuities*, 11 A.2d 160, 162 (Pa. 1940). But the phrase is not limitless and does not sweep under its breadth every possible type of damage Plaintiffs may encounter. "And the like" is "synonymous to 'similar to,' having some, if not all, of the characteristics" of the preceding phrases. *See, e.g.*, *Fischer's Pool Swimming Club v. Towamencin Twp.*, 87 Pa. D. & C. 157, 171 (Pa. Com. Pl. 1953). The preceding phrases in this instance, "fences, tile drains, marketable timber, [and] crops," all share certain common characteristics—namely, all relate to property features that are distinctly separate from the home and residential use of the property. Plaintiffs claim damage to their home, arguing that a mudslide "overwhelmed" their home and caused interior drywall to collapse in summer 2015. And Plaintiffs allege they have suffered continuing damage to their interior basement walls in the years since the first mudslide. They additionally claim that extensive, disruptive construction and excavation activities conducted in an attempt to manage the mudslides and sinkholes interfered with their right to quietly enjoy their home. In sum, the damages Plaintiffs claim fall outside the aegis of the arbitration provision.[6]

### 2. The Gist of the Action Doctrine

Columbia next alleges that Plaintiffs' claim for negligent construction and maintenance must be dismissed under the "gist of the action" doctrine. The doctrine exists to "maintain the

---

[6] Plaintiffs' complaint additionally notes damages to their property, not just their home. They do not provide any details as to what type of property damage they sustained, nor did Plaintiffs mention such damages in their Response in Opposition to the Motion to Dismiss. The Court thus lacks sufficient information from the pleadings to determine whether these claims fall under the arbitration agreement.

separate spheres of the law of contract and tort." *Blue Mountain Mushroom Co. v. Monterey Mushroom, Inc.*, 246 F. Supp.2d 394, 402 (E.D. Pa. 2002).  In short, it prevents a plaintiff from repackaging her ordinary breach of contract claim as a tort claim.  *eToll*, 811 A.2d at 14.  The critical distinction between a breach of contract claim and a tort claim is that the former stems from "breaches of duties imposed by mutual consensus agreements between particular individuals," while the latter stems from "breaches of duties imposed by law as a matter of social policy."  *Jones v. ABN Amro Mortgage Group, Inc.*, 606 F.3d 119, 123 (3d Cir. 2010).

It is the substance of the complaint, not the mere labeling by the plaintiff of a claim as a tort, that determines what type of claim is alleged.  *Bruno v. Erie Ins. Co.*, 106 A.3d 48, 68 (Pa. 2014).  But on the flipside, the "mere existence of a contract between two parties" similarly does not automatically mean the claim lies only in contract.  *Id.* at 69.  Actions arising "directly" from an alleged breach of a contractual duty sound in contract; actions based on "a contracting party's separate 'collateral' duty to perform a contractual obligation with skill and diligence" sound in tort.  *Id.* at 62.

The facts and holding of *Bruno* are instructive.  The defendant in that case had contractual obligations both to investigate for mold and to pay for all property damages caused by the mold.  *Bruno*, 106 A.3d at 71.  But Plaintiffs were not alleging in their complaint that Defendant failed to meet those obligations.  Instead, the issue was that the defendant, "during the course of fulfilling these obligations through the actions of its agents, acted in a negligent manner by making false assurances regarding the toxicity of the mold and affirmatively recommending to the [Plaintiffs] that they continue their renovation efforts."  *Id.*

Plaintiffs in this case are likewise not alleging Columbia violated any specific term of the contract; they do not allege Columbia built outside of the Easement zone, overextended the

temporary construction easement which was granted, or did anything else of that sort that is grounded in the specific terms of the contract. Instead, Plaintiffs allege that, during the course of fulfilling its contractual rights under the easement, Columbia's negligence caused them harm, allegations which plausibly fall under the category of Columbia's collateral duties to perform its contractual obligations with skill and diligence. Particularly in light of the fact that "caution should be exercised in determining the gist of an action at the motion to dismiss stage," Plaintiffs' claims for negligent construction and maintenance will not be dismissed. *Caudill Seed and Warehouse Co., Inc. v. Prophet 21*, Inc., 123 F. Supp.2d 826, 834 (E.D. Pa. 2000).

### C. Pennsylvania Storm Water Management Violations

Plaintiffs allege that all defendants violated the Pennsylvania Storm Water Management Act ("SWMA"), 32 Pa. Stat. Ann. § 680.13, by failing to implement "such measures as are reasonably necessary to prevent injury to plaintiffs' property in order to (1) assure that the maximum rate of storm water runoff is no greater after development than prior to development activities, and (2) manage the quantity, velocity and direction of resulting storm water runoff in a matter which otherwise adequately protects plaintiffs' property."

Both Crown Castle and Columbia move to dismiss this claim. Crown Castle argues that Section 15, which provides that "[a]ny person injured by conduct which violates the provisions of section 13 may … recover damages caused by such violation from the landowner or other responsible person," was repealed. 32 Pa. Stat. Ann. § 680.15. To support that proposition, Crown Castle cites 71 Pa. Stat. Ann. § 732-504. This law is the "repealer" provision included in the Commonwealth Attorneys Act. That Act provides, in Section 204(c), that the then-newly created Pennsylvania Office of Attorney General "shall represent the Commonwealth and all Commonwealth agencies in any action brought by or against the Commonwealth or its

agencies." This new Act required modification of the SWMA, which previously authorized the Department of Environmental Protection to bring claims "to restrain, prevent or abate violation of this act or of any watershed storm water plan" and to "institute an action in mandamus to compel counties to adopt and submit" storm water management plans. 32 P.S. § 680.10, 15(b).

The Commonwealth Attorneys Act repealer contained in 71 P.S. § 732-504 states in relevant part that "The following acts or parts of acts are repealed insofar as they are inconsistent with the provisions of this act: . . . Sections 10 and 15, act of October 4, 1978 (P.L. 864, No. 167), known as the 'Storm Water Management Act.'" The Act thus repealed the provision of the SWMA that authorized the Department of Environmental Protection to bring claims on behalf of the Commonwealth, but had no impact on the private remedy contained in in 32 P.S. § 680.15(c), A private right of action under the SWMA remains.

But while Plaintiffs have the right to sue under the SWMA, other issues with their claim as pled persist. Section 13 requires any person engaging in the alteration of land that might impact storm water runoff to "implement such measures consistent with the provisions of the applicable watershed storm water plan as are reasonably necessary to prevent injury to health, safety or other property." *Id.* § 680.13. Section 13 thus "requires a showing that the landowner's conduct violated the terms of a county-adopted watershed storm water plan." *Lincoln Investors, L.P. v. Iing*, 152 A.3d 382, 390 (Pa. Commw. 2016).

Plaintiffs' complaint fails to identify any watershed plan which was violated. The complaint merely recites elements of a Section 13 violation. While Plaintiffs do identify a watershed plan in their opposition to the Motion to Dismiss, none is found in the complaint. "[F]ormulaic recitation of the elements of a cause of action will not do" to overcome a Motion to Dismiss. *Bell Atl. Corp*, 550 U.S. at 555. Plaintiffs' SWMA claim will be dismissed.

**D. Nuisance and Trespass to Land**

In the same count as the SWMA claim, Plaintiff also brings a nuisance and "trespass to land by alteration of surface and subsurface drainage" claim. Columbia[7] argues that both claims are insufficiently pled and do not give it adequate notice of how it may be liable under either theory.

Plaintiffs' complaint is far from a model of clarity on these allegations. The nuisance, trespass, and SWMA claims all are interspersed under the same heading, without significant analysis or distinction.[8] Plaintiffs' only reference to the nuisance claim is its allegation that the Defendants' "joint failure properly to construct and to maintain the pipelines within the easement resulted in private and public nuisance." This one sentence, which simply states that a nuisance exists, is not adequate pleading; "mere conclusory statements[] do not suffice." *Ashcroft*, 556 U.S. at 678. Plaintiffs' nuisance claim will, thus, be dismissed.

Plaintiffs' trespass allegation is somewhat less sparse. They allege that Defendants committed trespass by "diverting surface and subsurface waters onto plaintiffs' lands and into their home." Civil trespass occurs when a party intentionally "[e]nters land in the possession of the other, or causes a thing or a third person to do so." Restatement (Second) of Torts § 158. Taking all inferences in the Plaintiffs' favor, Plaintiffs allege that Defendants improperly constructed the pipelines and that, in doing so, Defendants diverted a thing, water, onto Plaintiffs' land. While Plaintiffs' claims would surely benefit from a fuller articulation of the facts, taking all inferences in Plaintiffs' favor, they allege facts to plausibly give rise to a trespass

---

[7] Crown Castle also objects to the nuisance and trespass claims, but on statute of limitations grounds. These arguments will be addressed below. *See infra* Section III.E.

[8] Paragraph 58 contains a suggestion that Plaintiffs may also be alleging a claim for breach of fiduciary duty. This claim is not mentioned in the header, and none of the parties discuss it in the Motions to Dismiss. If Plaintiffs were attempting to bring a separate breach of fiduciary duty claim, it is dismissed for failing to adequately plead the existence of such a duty, for the reasons explained above. *See supra* Section III.A.

claim.

**E. Statute of Limitations Issues**

Crown Castle moves to dismiss three of Plaintiffs' claims—negligent maintenance, nuisance, and trespass—as barred by the statute of limitations. Plaintiffs filed their complaint on July 24, 2019, and Crown Castle received notice on July 30, 2019. Crown Castle argues that Plaintiffs were first aware of the alleged damage in April 2016, meaning the complaint is barred by Pennsylvania's two-year statute of limitations for actions sounding in tort. 42 Pa. C.S.A. § 5524. Plaintiffs make two arguments as to why the claims are timely. First, they argue that the statute of limitations for the negligence and nuisance claims was tolled by the "discovery rule." Second, they argue that the trespass claim is timely because it is a continuing violation.

1. The Discovery Rule

The statute of limitations generally begins to run as soon as the plaintiff could have first maintained an action. *Fine v. Checcio*, 870 A.2d 850, 857 (Pa. 2005). "Mistake, misunderstanding, or lack of knowledge in themselves do not toll the running of the statute." *Id.* But in certain circumstances, the limitations period can be tolled. One such circumstance, entitled the "discovery rule," is when "the injury or its cause was neither known nor reasonably knowable" to a plaintiff who exercised "reasonable diligence" to learn about the issue. *Id.* at 858. The reasonable diligence inquiry ultimately boils down to "not, what did the plaintiff know of the injury done him? [B]ut, what might he have known, by the use of the means of information within his reach, with the vigilance the law requires of him?" *Id.* (internal quotation and citation omitted). The clock only begins to run once the plaintiff discovers or reasonably should have discovered she was injured by another party's conduct. *Id.* at 859.

The "determination concerning the plaintiff's awareness of the injury and its cause is fact

intensive, and therefore, ordinarily is a question for a jury to decide." *Wilson v. El-Daief*, 964 A.2d 354, 362 (Pa. 2009). Plaintiffs argue that, while they realized in 2016 "defendant's underground fiber optic cables were likely channeling subsurface water out of the easement and into their home," they had no knowledge until the end of 2018 "that the fiber optic cable had been placed, negligently, in an underground artery within the easement." Taking all inferences in the Plaintiffs' favor, while Plaintiffs realized water was coming onto their property earlier, they did not know until December 2018 that the cause was actually due to Defendants' misconstruction of the bore hole. Plaintiffs could not see what was occurring in the easement area under the ground until Defendants opened it up and reported their findings to Plaintiffs. The discovery rule tolls the limitations period when "the injury *or its cause*" were not reasonably knowable. *Fine*, 870 A.3d at 858 (emphasis added). While Plaintiffs may have seen the damage in 2016 and theorized as its cause, a plausible reading of the allegations in the Complaint is that they did not know what caused it such that they could bring a lawsuit earlier than they did. Thus, "the ordinary rule should apply that factual issues pertaining to the plaintiff's notice and diligence are for the jury." *Wilson*, 964 A.2d at 365. Plaintiffs' negligence claims will not be dismissed on statute of limitations grounds.

   a. Continuing Trespass

Plaintiffs also claim that their trespass claim is timely because it is a continuing tort with damages running into the two-year period prior to when they filed their complaint. Water runoff-related torts can be of a permanent or continuing nature. *Kowalski v. TOA PA V, L.P.*, 206 A.3d 1148, 1160 (Pa. Super. 2019). To determine whether the trespass is continuing or permanent, the Court must look to factors including: "1) the character of the structure or thing which produces the injury; 2) whether the consequences of the [trespass/nuisance] will continue

indefinitely; and, 3) whether the past and future damages may be predictably ascertained." *Cassel-Hess v. Hoffer*, 44 A.3d 80, 87 (Pa. Super. 2012). A permanent trespass results in a "visible change to the land" with indefinite consequences; all "past and future damages" resulting can be immediately ascertained. *Id.* A continuing trespass, on the other hand, results when it "is impossible to know exactly how many incidents of trespass will occur in the future, or the severity of the damage that may be caused, such that the full amount of damages cannot be calculated in a single action." *Kowalski*, 206 A.3d at 1160.

Plaintiffs allege that Crown Castle's trespass has resulted in numerous sinkholes and mudslides in the past, and they expect more sinkholes and mudslides to occur in the future. The consequences of the trespass thus appear indefinite, and the damage that may be caused by future mudslides and sinkholes cannot reasonably be ascertained. *Compare with Cassel-Hess*, 44 A.3d at 87 (holding trespass to be permanent where it resulted in the creation of a standing body of water that attracted mosquitos). Plaintiffs do not know how many more problems will arise, nor do they know the severity or extent of damage that may be caused. Plaintiffs have alleged a continuing trespass. Plaintiffs thus can potentially recover for damages in the two-year statutory period preceding the suit.

For the foregoing reasons, Columbia's and Crown Castle's Motions to Dismiss will be granted in part and denied without prejudice in part. An appropriate order follows.

**November 20, 2019**          **BY THE COURT:**

                               **/s/Wendy Beetlestone, J.**

                               _____
                               **WENDY BEETLESTONE, J.**